The court will now call 118-644-BALLARD-RN-CENTER v. Kohll's Pharmacy and Homecare. Are you ready to proceed? We are, Your Honor. Appellee, ready? Yes, Your Honor. May it please the court, counsel, I am Daniel A. Edelman, representing Ballard RN Center. I would first like to address the propriety of Kohll's attempted partial tender to moot one of three counts of a three-count complaint. Our position is that a partial tender is insufficient to moot anything. There is no precedent for allowing such a partial tender, and Kohll's makes no attempt to defend it, neither does the amicus brief filed on behalf of Kohll's. We would submit that the issue is weighed. In any event, both this court, the appellate courts, and federal courts applying an identical standard have consistently held that there is no such thing as partial tender. In the Barber case, this court held that a case is moot when, quote, the claims, plural, of the named representatives have been resolved, close quote. Not some of them. All of them. In the Bates and Jones case cited in our brief, the appellate court held that where you have a two-count or multi-count complaint and a tender is made as the relief sought on one but not all of the counts, that is not sufficient to moot anything. The same issue has arisen in the federal system. We cite at least a dozen cases in our brief, and all of those cases uniformly hold that you cannot have a partial tender. The defendant does not get to tender as to those claims which it feels pose the greatest threat to it, ask the court to rule on other claims, and then claim that some or all of the case is moot. And since the federal definition of mootness is the same as this court's definition, those cases are persuasive and should compel rejection of any sort of partial tender. The only thing that the defendant says is that there is a policy in favor of settlement of cases. I would dispute that there is such a policy. We have a class action statute. We have cases such as the Shaggy which hold that a class action is a desired, desirable means of resolving multiple modest claims. And we do not have in either of those places a requirement in effect of a pre-suit demand to which the defendant can respond by offering to settle the cases against it. Such requirements have on occasion been imposed by the legislatures, state and federal. You have that kind of a requirement in the case of claims against governmental entities. And about 20 years ago, the legislature imposed such a requirement with respect to claims against car dealers under the Consumer Fraud Act in Section 10A, 815 ILCS 505-10A. This court held that requirement invalid as special legislation in the 2003 Allen case, and no attempt has been made by the legislature to readopt it or to broaden it to other cases. So the alleged policy in favor of allowing defendants to settle, I submit, is nonexistent. More importantly, in this case, a partial tender has nothing to do with settlement. It allows, by definition, it presumes that part of the case will continue. That has nothing to do with settlement at all. What it has to do with is a defendant's attempt to manipulate the claims against it. That's not something which has heretofore been permitted. Plaintiff gets to decide what cases to allege. The defendant, if it makes a tender prior to a motion for class certification as to all the relief sought, can try to moot it. Excuse me, Mr. Edelman. Yes, Your Honor. You filed your motion for class certification, right? Yes, Your Honor. I'm just curious as to why you never filed a memorandum of law supporting that motion, never sought a hearing in that motion, and the two years before the defendant filed his motion for partial summary judgment. What was occurring in that two years? Mainly discovery and, in some related cases, adjudication of motions to dismiss. There were a number of TCPA cases pending in the circuit court. Judge Conard, when she was chief judge, put them all on one calendar. And schedules were established. We'll hear motions to dismiss, then we'll get into discovery, then we'll get into class certification. And that's what happened in this case. Discovery proceeded. Discovery was very difficult to get. I don't think there was any discovery that we got in this case without having to file a motion to moot it out. We didn't get the transmission logs without compelling production and inspection of the defendant's actual computer hard drives, which turned out to show that 4,142 faxes were successfully transmitted on a single day. So once we had that, in accordance with Judge Cohen's desires, we filed an amended motion for class certification, and that was briefed and ultimately granted. So that's what was happening during this period. The case was active and being handled in accordance with the schedule established by the circuit court. In the Barber case, this court effectively held that in order to avoid mootness, you have to file a class motion with a complaint. Barber didn't say what the class motion had to contain. In this case, the appellate court imposed what amounts to an impossible standard, paragraph 58 of its opinion, by saying that you have to have evidence adduced in discovery. Since you don't get to conduct discovery until 30 days after the defendant is served, that, in effect, always would give the defendant an opportunity to make a tender if it would make a tender as to the entire case. As I indicated, there is no principle in Illinois law that allows a defendant that kind of opportunity, although Coles insists that such a policy exists. There's really no justification for requiring evidence. It's an impossible requirement, and if it's upheld, class actions for modest damage claims are basically dead in this state. That's the effect of the ruling. The defendant apparently recognizes this and cites the Weiss case on page 10 of its brief as showing an applicable standard. But Weiss has to do with the sufficiency of the allegations in a complaint, not a class motion, to withstand a 615 motion to dismiss or strike the class allegations. In this case, the complaint did contain factual allegations as to the nature of the facts, the facts as attached, and set forth that it is obviously a blast fax. It's not individually addressed. It's addressed on the margin to HR executives. And that kind of case has been repeatedly held appropriate for class certification. Coles did not move to dismiss or strike the class allegations, and on this record must be taken as having admitted that the complaint was sufficient. If you look at the complaint and the motion, they between them contain all of the necessary information to justify class allegations. The motion itself, the initial motion, sets forth the class as sought to be certified, references the complaint, and cites a number of decisions in which blast faxes have been found proper for class certification. After we got the discovery, we got the discovery as to some but not all of the faxing done by the defendant. We therefore limited the class definition to faxes sent on one occasion, and that was the amended motion. We urged the court adopt the same standard as the Seventh Circuit in the Damasco case. Damasco basically adopted this court's Barber decision, and it recognized the issue and says that the appropriate way to handle it is to have a motion filed at the outset of the case with the complaint, and that that motion is sufficient to avoid mootness even though, quote, it has not fully developed or discovered the facts necessary to obtain certification, close quote. And once that information is obtained, it's placed before the court, and the court decides class certification on the merits. It has the advantage of not abolishing the class action statute. It also has the advantage of avoiding litigation of the sort involved in this case, such as litigation over the sufficiency of an initial class motion. It also does not encourage the defendant, in order to further a mootness argument, to engage in discovery obstruction requiring things like orders to inspect computers, which really should not be necessary in any sort of case. Unless your honors have some questions on those issues, I'd like to turn to the propriety of class certification, which is raised by Coles in response to our petition. This would be under an abusive discretion standard. I don't think there's any question that the record in this case shows that there was a blast fax. It's generic, it's not addressed to a specific person, it's not sent within Cole's usual trade area. It references a website created for the specific purpose of this promotion, and it was obviously something that, just by looking at the fax, this wasn't created to send to less than 39 people. It was sent on a mass basis. When we get into the hard drive, when we get the discovery, there were 4,142 successful transmissions. The defendant bought the list, hired somebody to send it, it was in fact sent. It was done to obtain new business. It's not a communication to existing customers. Defendants claim that there's some individual issues regarding consent or an established business relationship. There aren't, for a number of reasons. First, under the FCC regulations, you have to have a fully compliant opt-out notice to assert either defense. It's considered a defense. This fax doesn't contain that. Second, it's a blast fax. It's not something where anybody has asked, do you want a fax sent? It's not where any of the recipients has any kind of relationship. It's a purchase list sent on a mass basis. The defendant has the burden of proof under FCC regulations to show consent or a business relationship. No such evidence was ever introduced. The defendant speculates that maybe the list seller obtained consent, but FCC regulations expressly hold that you cannot transfer consent or a business relationship in that manner. Either you obtain consent for Kohl's to send a fax, or Kohl's has a relationship, but a relationship with the list seller just doesn't cut it. This court, in the Miner v. Gillette case and the prior Harrison Sheet Steel case, held that speculation as to individual issues not substantiated by record evidence isn't enough to defeat a class. And I submit those decisions apply fully here. A defendant at one point claims that you have to show receipt, an individual testimony, but there's no need for that. You have a transmission log. You have a contract whereby the defendant agreed to pay only for successful transmissions. A defendant paid, after reviewing the transmission report, for the successful transmissions, in effect admitting that 4,142 were sent. I think that's ample evidence of successful transmission receipt. Defendant cites a federal district court case, Beattie Construction, for the proposition that under some circumstances people have to come in and submit affidavits or testimony that they got the fax. But Beattie Construction was a case where the defendant destroyed all the evidence of transmission. The court held that we're not going to let the defendant defeat a class action by destroying evidence, so we're going to certify the class and let people come in with testimony. But that's not necessary here, where the defendant's records show successful transmission. A defendant's main argument appears to be that allowing a class action imposes excessive damages, the circuit court decision in Kim v. Sussman. The answer to that is simply that the remedy and the problem don't match. If there is a problem as to excessive damages, and the defendant has never shown that damages are excessive, the proper thing to do, and the policy followed by the federal courts, is to certify the class and reduce the damages equally for each class member. If you don't do that, you don't solve the problem. The reason is that this class has been notified. 4,142 notices have been sent. If a class were to be decertified, due process requires that another notice be sent saying you can no longer rely on the existence of the class action, and you have to bring individual claims. So you would have a substantial number of people bringing individual claims, you would enormously increase the transaction costs, and you would not eliminate the issue of excessive damages if they are in fact excessive. We also submit that the Kim case is just wrong. It was decided prior to the 2005 amendment to the TCPA called the Junk Facts Prevention Act. Prior to that time, most cases did certify classes in TCPA cases. In 2005, as part of the Junk Facts Prevention Act, Congress directed the Government Accountability Office, an agency of Congress, to report on whether enforcement of the TCPA needed to be increased, including consideration of criminal penalties. Congress really wanted junk facts put to a stop. It felt this was an unfair method of competition and wanted it stopped. It was a major problem, notwithstanding the fact that it was illegal. So this, I think, compels rejection of the notion that a decrease in remedies is necessary and that small claims cases are sufficient. In fact, what happened when claims were brought individually was that the defendants would argue things like that the TCPA violates the First Amendment, violates the Fifth and Eighth Amendments, the government would have to come in to defend the constitutionality of the statute. Basically, they took actions which made individual cases uneconomical and impossible. So either you're going to have a class action to enforce this statute, or it's not going to be enforced. One of the problems the GEO report noted was that governmental enforcement was not terribly effective. Large fines were assessed, but they were never collected, and the harm that Congress wanted to curb continued unabated. Those basically conclude my remarks, unless this Court has some further questions. I don't think there are further questions, Counsel. Thank you. Thank you. May it please the Court. Counsel, my name is Amir Thomasby. I represent Coles Pharmacy. I want to start with the point that Justice Thomas brought up with respect to the time. You heard Counsel talk about that he had to do some extensive discovery. So here are the dates. The case is filed in May of 2010. There's almost two years of discovery. The computer where they claim to have received the list, they received all those documents on March, no later than March 26th of 2012. What I would call the original or the real motion for class certification was filed on November 19th of 2012. We're talking about almost a period of eight months that they had the information that they claim they needed in order to appropriately file a motion for class certification. Counsel, let me ask you this question. Mr. Edelman asserted that to get at discovery, they had to file motions to compel. Is that correct? That is correct. Now, just a minute. Did that transpire during those eight months? No, it transpired prior, and that's why I give them, Justice Kilbride, the benefit of the doubt. Say that they had to file a number of motions to compel, they did. On March 26th, 2012, all of that had been done. From March 26th, 2012 to November 19th, 2012, no further discovery with respect from at least my clients in the list was needed. So they had everything as of March 26th, 2012, which I think is critical. That's why I give them the benefit of the doubt, even given those two years. Before I get into the couple of points that I want to make, three points, I want to bring to this Court's attention how coincidental the timing of this argument is here today. On Monday, the U.S. Supreme Court accepted a writ of certiorari in a case called Gomez v. Campbell, 768F3D871. And it's a TCPA case. I have copies that I can tender to the Court now or whenever it pleases, not involving a fax, but involving text messages, which I guess the General Assembly hasn't abolished as of yet. And in that case, the Supreme Court's going to look at a similar issue as we have here. In other words, whether tender of damages to a plaintiff in a class action prior to class certification moots the controversy and takes it beyond Article III. And the reason that I bring it up isn't because this Court is in any way bound by what the U.S. Supreme Court is going to do. It's not. This Court's only bound by itself and the General Assembly. But I bring it up because the majority of the cases relied upon by the plaintiffs in this case are Seventh Circuit cases, Ninth Circuit cases, Eleventh Circuit cases that are all going to be under review sometime this year. I guess this Court is a little bit ahead of the folks in Washington since we're sitting here today arguing. In any event, best case scenario for the plaintiff, those cases are upheld and we're where we are today. But I bring it up because I don't think that we should be focused on those federal cases that they cite. We should be focused on the Supreme Court case that this Court decided in Barber. We should be focused on Section 801 and the requirements under the Illinois statute for class certification. Speaking of tender, you haven't addressed, have you, the tender of the single count issue? Tender is to the single count. Will you be addressing that? Yes, I can address it now, Your Honor. All right, fine. We're not talking about split counts. They're all dealing with one count, one direct cause of action. Here they chose to file three separate cause of actions that have three separate elements of damage. So they haven't cited a single case that says you can't, by tendering damage for a statutory claim, moot that claim. And so to say that it's a little bit of a red herring to say that the, for instance, the McMahon case, the Scott case that they cite, all those dealt with one single cause of action. They didn't deal with what we have here where they chose to file a count for TCPA, a count for conversion, and a count for, I think it was the Consumer Fraud Act. So because they chose to split up their remedies, there's nothing, there's not one case that says you can't, just like you can file a motion for summary judgment on one count or another, seek to moot that count. That would be how I would address that, Justice Thomas. So the focus needs to be on, you know, those two things, what this Court's going to do in Barber, 801, and then the policy. And I want to talk just for a moment about the policy, the effects that it's going to have if this Court affirms, the effects if it reverses, and then humbly what I think is a solution to the concerns posed by the plaintiffs, to the concerns posed by the defendants, and to the concerns posed by this Court in Barber when it said it wants to protect the rights of the class members. I'm not going to stand here before you and say that if you affirm the appellate court, it's not going to have an effect on TCPA class actions. I certainly think it will. I think we're going to see more settlements. I think cases are going to get resolved quicker because damages are going to be tendered sooner. I don't necessarily think that's bad policy. It's not. We're promoting settlement, which, as noted in Barber by Justice Freeman, that's a good thing. The other thing is it doesn't in any way prohibit other plaintiffs from coming forward. And, again, I go to Barber and Justice Freeman's comments. He said, and I think it's worth quoting, speaking of the refund, quote, there is no indication that defendants' refund to plaintiffs affected the rights of others who did not receive similar refunds. Presumably, the remaining class members can either pursue class litigation or bring claims separately. Same thing here. So by allowing a case, a plaintiff, to be paid early on, it in no way affects the rights of other plaintiffs. And this Court's recognized that. The other point that I want to make with respect to the argument that it completely eviscerates class action lawsuits in Illinois, that's not the case. I mean, the TCPA is one type of class action lawsuit. Quite frankly, maybe we want it eviscerated given some of the policy considerations. But there's plenty of other class action lawsuits dealing with drugs, dealing with hip replacements, dealing with products liability cases that's not going to eviscerate because it's not going to be a $500 damage. Those concerns are not valid. Now, if this Court reverses the appellate court and says, you can file a shell motion, as I've been calling it, for class certification, and I'll get to their actual motion in a second, we're going to see that in every bad facts case. We're going to see it in every FDCPA case. We're going to see plaintiffs being able to go out and see if there's a class action without any actual supporting facts. And that's really a bigger policy problem than what we'll have if we allow settlements to occur early. And that's a bigger concern, in my eyes, from a policy perspective. So what's the solution as far as the policy goes? How can we, I guess, create a balance between protecting the class interest and promoting settlement? And I think what we need to do is there has to be some type of threshold when these class motions are filed. In other words, if you look at plaintiff's motion for class certification, with respect to Count 1, it just says, all those who received the facts after, I believe it's 2005. It doesn't say anything about Section 801. It doesn't talk about the numerosity. It doesn't talk about common questions of law and fact. It doesn't talk about whether it's the appropriate plaintiff. I'm talking about the original motion. It doesn't consider any of these. So if we're going to allow for a class motion to be filed with the complaint, let's at least meet the threshold requirement under 801. Let's at least have some facts and some law. I mean, in this case, we know, for example, that the facts went out in April of 2010. So why not file a class motion for class certification saying that on this date, Ballard received the facts. We expect in this month additional people received, you know, something. Give us something aside from everybody who received the facts after the year 2005. That doesn't give us any indication or any evidence that there's any reason to move forward and allow discovery, which, again, I'll point out occurred in this case. So I think that if this Court wants to look at Barber and say, well, we need somehow to protect the class rights, and allowing them to file any motion, I don't think is the way to do it. Let's set forth some threshold requirements and look to 801 so that we have more than just a hunting ground for the plaintiff to try to find a class action. Is there a policy consideration with respect to a dependent gaining the system by tendering to the named plaintiff before a motion for class certification can be heard? Well, certainly, yes, yes. I'm saying I'm sure your position is that certainly not what happened in this case, but could you address that? Yeah, that's right, Justice Thomas. It's not what happened in this case, but absolutely there would be a policy concern, and I'm not going to stand up here and tell you there wouldn't be, by allowing a plaintiff to pick off that term that's used right away. And maybe there is a huge class out there, and if you allow it to pick off right away, what's the remedy for those others? They can file other cases. But from a policy perspective, that's why I think we need to bring forward some type of threshold that wasn't articulated in Barber, because I don't think, quite frankly, anybody foresaw this to be an issue. If you look at the Damasco case, there was no motion for class certification filed. But when I read that case, I read it to mean there has to be something to bring before this Court, some type of evidence in your motion that indicates we should allow you to move forward. In this motion for class certification, we don't have anything like that. So I think the solution to that policy concern in Justice Thomas, it definitely, I'm not going to say it's not a concern as much as I'd like to for my client. We need to make some type of threshold. So we create that balance that I think this Court was concerned about in the Barber case. How do we do that? How do we create that threshold? It's not in the statute. We pull out of thin air. We say it in this case, moving forward, we change the rules. How do we do this? Yeah, and I anticipated that question. Here's what I've come up with for what it's worth. I wouldn't presume to be able to tell you, Justice, how it can be done. But I think we have to look. It's easier when you're asked. I think we look to 801, and we look to the requirements under 801. And it's not an easy, I guess, formula to come up with. But there's got to be at least some factual support under 801. So there has to be some evidence that these faxes were sent to more than one individual. There has to be some evidence that there were common issues of law and fact. Now, I know your question, Judge Tice, is, well, how do we say what's enough and what isn't enough? And I think that's something that has to be left ultimately to the trial court to make that decision. This court can set forth the standard that you need to meet a threshold, albeit produce some evidence that we can even consider a motion under 801. That wasn't done here. I think that has to be discretionary. I don't think we can make a fine-line rule as to what that is. That's the best I can answer that, Justice. Counsel, speaking of threshold issues, I know you treat the tender issue really as a secondary issue, but if we resolve the tender issue that it doesn't move things out, does that resolve all these other issues, at least in this case? As far as the remaining counsel, Justice? Yes. Justice Kilbride, no, it doesn't. I mean, this case was, I think you got to look at it two ways. One from, you know, counsel is correct that if I'm going to stand up here and argue settlement, you know, it gets rid of cases. Well, it's not doing that in this case. That's a larger policy argument. So, absolutely, if the tender issue is resolved in the favor of Kohl's, the case isn't resolved. But I can tell you it moves it into the right direction because now we're talking about, and it was a calculated decision to file summary judgment under just one count, now we're talking about conversion and damages that are easily, the case then I think could be easily resolved and settled. I don't know if that answers your question. Well, for the sake of argument, what I was asking is if it's resolved in favor of Ballard here. If it's resolved in favor of Ballard? Right. Well, then we're looking at a situation where shell motions for class certification can be filed, and I believe eviscerate what this Court said in Barber altogether. Well, do you think Barber really covers a partial tender? I don't think it does. No. Okay. I think, and I don't see it as a partial tender, Justice Kilbride. I see it as. But let me back up. I mean, you tendered on the one claim and only one claim. Correct. Okay. So explain how that's not partial. Because the way that I see the complaint is there's three separate counts seeking. In this instance, there's three separate damage remedies. So if you're talking about, for example, a common law legal malpractice and breach of fiduciary duty claim, in most instances the facts are going to be similar, the damages are going to be the same, or breach of contract and breach of fiduciary duty. In this case, you're talking about distinct damages for each count. And so as I see the tender, it completely covers, it's a complete tender for the violation of the TCPA. And the last point I want to make, Justices, goes to, again, protecting the class rights. And I do think that's important. I think it's an important policy consideration. And the appellate court, in quoting partially what Justice Freeman said, it says, if the purpose of a motion for class certification is to sufficiently bring the interests of the other class members before the court, then a motion must contain sufficient factual allegations so that it does, in fact, bring the interests of other class members before the court. We don't have that here. If you look at the motion, it's in the record, it's very cryptic, to the point where I don't think it could be recognized under Barber as bringing the interests of the class members forward. And this is all, just finally, this is all aside from the fact that we're talking about an eight-month gap between the time they had the information and the time that the class motion was filed. So I think this court could affirm the appellate court, but at the same time address some of the issues that have been raised with respect to filing of shell motions and allowing tenders before any discovery has been done. If there's any further questions, otherwise I'm... I don't believe so, counsel.  Thank you. Thank you, Justice. Mr. Edelman. Your Honors. First, the statement that no case cited involved a partial tender is wrong. The Baxter and the Jones cases from the appellate court cited in our brief involved cases with two counts, generally consumer fraud and common law fraud against automobile dealers. A tender was made on the common law fraud count. The appellate court in each case held that such a tender is not sufficient to move anything. So it involved exactly the same situation, two different legal claims arising out of the same event or transaction, and an attempt to tender as to one of the two or more legal claims. It was held insufficient. Let me address briefly the case, the Gomez-Campbell case in which the Supreme Court has granted cert. That was a case in which no motion was filed with the complaint. Just going back to that, there is more significant difference in this case between the counts than the case you cited, right, with consumer fraud and common law fraud? The only difference would be that you have statutory damages under the Telephone Consumer Protection Act, but they arise out of the same event. No question, but the other counts in this case are what a conversion, you mentioned. And consumer fraud. And consumer fraud. It's alleged to be an unfair practice based on the same faxing as involved in this case. I think they have exactly the same relationship. The case before the Supreme Court. No class motion was filed with the complaint. No attempt was made at a partial tender. After a motion to dismiss was denied, the defendant made a tender of individual damages. The only claim was, I believe, TCPA. The Ninth Circuit held that a tender or offer of judgment in a class case never establishes mootness. It's inconsistent with this Court's Barber decision. The case does not present the issues of what happens if a class motion is filed with the complaint and what happens if you attempt a partial tender. The Supreme Court can, the United States can opine on what it wants, but those issues are not presented in that case. The alleged delay in discovery. There was no delay, nor is there a finding in the federal court decision or anywhere else of such a delay. We had to take discovery from third parties. Once we obtained the hard drive, you need an expert to analyze that. So the case was diligently prosecuted in accordance with the requirements of the circuit court, and the circuit court had certified a class. It had no difficulty in finding that the class was appropriately represented and that everything was done appropriately. With respect to what a class motion has to contain, I think the requirement is simply that a class motion or a class relief has to be requested in good faith and with a reasonable basis. All of the necessary allegations in this case are in the complaint. So what the defendant's position basically is, is that you have to either copy all of the allegations into the motion or it's not sufficient, or that you can't read the two together. Rule 134 of this court indicates that repetition of allegations is not favored. It certainly doesn't serve any useful purpose. It's a form over substance argument. In this case, it's quite clear that just from looking at the facts and the allegations in the complaint that it is a blast fax. It's generic. It's not individually addressed. It references a website that was created for this particular campaign.  by sending a fax to less than the 40 people necessary to certify. Why don't we have allegations regarding a specific date? Well, that's what you need discovery for. We don't know that the faxing of this fax was done in one day or more than one day. That can't be known at the outset of the case. What is known is that this fax bears every earmark of a blast fax, lack of individual address, non-compliant opt-out notice. There's almost no one when you see one, and this is one. It's an appropriate case for a class. With respect to Damasco, Damasco expressly states that the motion does not have to contain evidence or facts. It says, the quotation is, fully developed and discovered the facts necessary to obtain certification. That is assumed not to be present. Filing the motion with a complaint nevertheless protects the class against mootness. With respect to policy arguments, I've heard no policy in favor of a partial tender. If somebody wants to resolve a case, you can always discuss settlement, but generally the wrongdoer doesn't get to decide what claims are going to proceed against it. That's what the argument amounts to. With respect to eliminating claims or certain types of cases, Congress has enacted a statute. Congress has had an opportunity to limit relief and has instead decided that it wants greater enforcement. There is no policy against class actions for Telephone Consumer Protection Act cases. Other types of cases, such as drug and medical device cases, tort cases, have their own problems. Often those are not suitable for class certification because the damages are quite large and individual issues are presented. Sometimes you have class cases, sometimes you just have an agglomeration of tort cases that can be handled together through appropriate means. The policy of Illinois is here to forbid that modest claims for damages, such as under the TCPA, are appropriately handled for a class action. If some hiatus is to be prescribed, the defendant has an opportunity to resolve the cases without facing a class action. That's really something the legislature should do, particularly given the fact that this kind of demand requirement is known to the legislature. It is required, for example, for claims against the City of Chicago. It was at one point done in Section 10A of the Consumer Fraud Act. And the legislature, knowing of how these demand requirements work, has not seen fit to attempt to impose it with respect to other claims of any sort. I think that it has allowed the class action statute to remain in the books unamended. I think under those circumstances, this is not the sort of requirement that a court should create. There are no standards. It's something which either doesn't exist, and if it does exist, it should be up to the legislature. Unless Your Honors have some further questions, that ends my remarks. Thank you, Counsel. In Case No. 118644, Ballard RN Center, Inc. v. Kohls Pharmacy and Home Care, Inc., will be taken under advisement as Agenda No. 23. Mr. Edelman and Mr. Thomasby, thank you very much for your arguments this morning. You're excused at this time. Mr. Marshall, the court is going to take a ten-minute recess.